In the Matter of ————, an Attorney.

Third Department, November 15, 1916.

**Attorney at law — disbarment proceedings — evidence not sustaining charges — alleged abuse of legal process.**

Proceeding to remove an attorney at law from office upon the charge that he purchased a railroad ticket with the preconceived plan and conspiracy to defraud the railroad company by using the process of the court in a suit against said company, upon the fictitious and unfounded claim that it had refused to redeem the ticket so as to become liable for the statutory penalty, and also for committing perjury on the trial of the action. The charges against the respondent were sought to be sustained by the testimony of paid detectives to whom he is alleged to have confessed to the conspiracy. Evidence examined, and *held,* insufficient to sustain the charges.

Evidence to sustain charges which will warrant the disbarment of an attorney at law should be clear, satisfactory and convincing. The respondent is presumed to be innocent, and proof of his guilt must be clearly established, and especially so where the charges, if true, constitute a violation of the criminal law.

MOTION to confirm report of referee in a proceeding against an attorney for misconduct and for his removal from office.

*Harold D. Alexander*, designated by the court, for the motion.

*Edgar T. Brackett*, for the respondent, opposed.

COCHRANE, J.:

The respondent was admitted to the bar on or about the 1st day of July, 1914. This proceeding for his removal from office was instituted by the New York Central Railroad Company. On September 27, 1913, the respondent, then a law student, and another law student purchased tickets at the Albany station of the railroad company from Albany to Ravena. The respondent represented a life insurance company and his mission to Ravena was for the purpose of soliciting insurance. The mission of his companion, the other law student, was to accompany him. After purchasing their tickets and while waiting for a departing train the respondent was taken ill and the two abandoned their project. They contend that they thereupon presented their tickets to the ticket agent for redemption and that the agent refused to redeem the same. The fact of such presentation is denied by the railroad company, and on this disputed question of fact depends the result of this proceeding. Shortly thereafter each of the two law students commenced an action in the City Court of Albany against the railroad company to recover the penalty of fifty dollars provided by section 1562 of the Penal Law for improper refusal by the railroad company to redeem unused tickets presented to it for redemption. The railroad company succeeded in the actions in the City Court, but on appeal to the County Court the judgment of the City Court was reversed and on further appeal to this court the judgment of the County Court was affirmed. The cases were retried in the City Court of Albany in February, 1915, and again resulted in judgments in favor of the railroad

company.   All of such trials were before the city judge without a jury and the records before us disclose no statement of the reason for his decisions.   Thereafter this proceeding was instituted, it being alleged that the respondent entered into a preconceived plan and conspiracy to defraud the railroad company out of the amount of the penalty, and that for that purpose he resorted to an improper use of the processes of the court in prosecuting a fictitious and unfounded claim, and that in such unlawful scheme he gave false testimony and committed the crime of perjury.   A referee appointed to take the testimony and examine into the truth of said charges has found that the facts alleged in the petition are true and his, report is now before this court for confirmation.   It is needless to say that if the facts are as alleged the respondent is not only unfit to be a member of an honorable profession but is also unfit to be a member of society.   The facts alleged constitute serious crimes against the laws of the State.

After careful consideration of the facts we have reached the conclusion that the charges against the respondent are not fairly sustained.   He and his companion who was with him both vigorously assert that they did present the tickets to the agent for redemption.   Two witnesses who knew the respondent by sight testify that they were in the Albany station and saw the respondent and his companion approach the ticket office and hand their tickets to the agent, who returned them. These witnesses were not sufficiently near to hear the conversation, but if they are stating the truth their testimony is strongly corroborative of the contention of the respondent. They were not sworn on the trial of the action in the City Court because it was not then known that they possessed any material information.   That the respondent was in fact taken ill while waiting for the train in the Albany station is clearly established by the testimony of Dr. O'Keefe who testifies that on that day, which he fixes by a charge in his books against the respondent, he prescribed for the latter who was ill and vomited in his presence.   If the respondent was thus taken suddenly ill, such fact explains his change of purpose in not going to Ravena after purchasing the tickets and goes far to discredit the contention of a preconceived design to purchase the railroad

Third Department, November, 1916.    [Vol. 175.

ticket for the purpose of making such purchase the basis of a fictitious claim against the railroad company for a refusal to redeem the same and making a sham illness the pretext for demanding such redemption. The findings of the referee are apparently based on alleged admissions made by the respondent and his companion to two detectives to the effect that they had not in fact presented the tickets for redemption. Prior to the last trial of the actions in the City Court of Albany these detectives sought out the acquaintance of the two young men, particularly the companion of the respondent, the latter having left Albany at that time and gone to another county where he resided, for the purpose of practicing law. One of these detectives was occupied 128 days in investigating the case. Much of their energy seems to have been exerted in forming a strong friendship between themselves and the young law student, the companion of the respondent. They posed as theatrical men and took him to theatres and otherwise made him the subject of their entertainment. It appears from the record that in their association with the respondent and his associate these detectives repeatedly and constantly brought the conversation around to the subject of the pending law suits against the railroad company with a frequency and lack of adroitness which must have made their purpose manifest to the most ordinary intelligence. That purpose clearly was to gather some admissions or something which might be construed as admissions from the young men. The latter seem to have understood the purpose of the detectives and indiscreetly perhaps led them on. That they were believed to be detectives and not theatrical men as they represented themselves to be appears from the testimony of the woman who kept the boarding house where one of the law students boarded, who had been in theatrical work herself, and who told him that one of the detectives whom she had seen at her house was not a theatrical man, but as she believed a detective. That she so told him in the presence of this detective himself is not denied by the latter. The respondent testifies that he believed them to be detectives. His associations with them, however, were rather limited because, as above stated, he had left Albany at the time when they began their operations in that city. On two occasions he visited the city and met these detectives and

was the recipient of their entertainment. What occurred between them and the nature of the admission which the respondent made to them is best described by himself in his testimony as follows: "Q. Go ahead now and tell anything you remember said or done between you or by you and Switzer together, or separately at this second trip? A. Why, it was down at the Hotel Hampton, and I believe Lewis — is it Lewis? He goes under two names. Q. Lambert he was known as? A. Lambert and Switzer were down there and I believe Foster with them. I don't know; I think he was. We were starting out of the hotel and walking up the street. He says, 'do you see that coal hole there?' There was a coal hole. Q. Who said that, Lewis? A. Lewis. I says, 'yes.' He says, 'do you know,' he says, 'I pulled off a good one once.' He says, 'I was walking along in New York City,' he says, 'there was a coal hole stood ajar, and,' he says, 'I had a friend with me who had hold of my arm and,' he says, 'purposely I stepped into that coal hole, and,' he said, 'I fell right down and wouldn't move, made my friend pick me up, and,' he says, 'he called an ambulance and I went to the hospital and stayed there for several weeks and,' he says, 'before I fell in this hole I had a breech, a bad breech, and, I says, I claimed to them and made them believe that this breech was caused by this fall, and,' he says, 'I got a nice settlement, I think around $5,000; I don't remember.' Then this man Switzer spoke up and he says, 'oh,' he says, 'that is nothing; Bliss has got a better one than that.' He says, 'he sued the railroad company for the redemption of tickets that were never even presented.' Q. What was then said? A. I don't remember of saying anything. I guess I laughed and said that was a good one, or something like that, in a joking way. * * * Q. Now, did you tell them or either of them at the Hampton Hotel or anywhere else that you never had presented these tickets for redemption? A. I either told them that or at this time did not deny it. But the same conversation I told them that it was a joke, I was just trying to go them one better. They were enlarging upon their ideas and I was just telling —. Q. He was telling about the coal hole? A. Yes. Q. And were you satisfied that was a

fake ? A. I knew it was. * * * Q. And you felt they were trying to land you and you were willing to go as far as they wanted to ? A. Why, yes, I was apparently having a good time when I was down here and I thought nothing about joking with them, didn't consider it serious. Q. And deceiving them if you could ? A. Why, yes; I wanted to be equal to them. Q. They were trying to cheat you, you felt ? A. I knew they were." The judgment of these young men in matching stories with two men whom they believed to be detectives endeavoring to discover evidence against themselves is not to be commended, but wisdom and discretion are not always the characteristics of youth. Sometimes in the place thereof we find a spirit of bravado or a desire for adventure which explains that which in older persons would be inexplicable. The respondent has had the courage and candor to admit in this proceeding that he made those foolish admissions to the detectives and has given his explanation thereof. We cannot say that his explanation is so inherently improbable under the circumstances disclosed by this record as that it must be necessarily rejected. We are not unmindful that if these young men were conspirators and perjurers, and were attempting to become thieves, all of which is true if these charges are true, it would have been far easier and less dangerous for them to have denied this foolish talk which they had with the detectives. Had they done so there would have been nothing in the case to corroborate the testimony of the latter. And we are unwilling to say that their candor in admitting these conversations should be penalized by a rejection of their explanation when a dishonest denial would have stood them in better stead. In weighing evidence it is the rule that such inferences should be drawn if possible as will harmonize every part thereof consistently with the truthfulness of all the witnesses. If we accept the testimony of the young men including their explanation of their admissions to the detectives all the testimony harmonizes and we do not by implication find that any witness has intentionally falsified the truth. On the other hand, if we reject such explanation and find the respondent guilty of the charges against him we must necessarily by implication find that not only he and his companion but the two witnesses who testify to

having seen him in the Albany station have intentionally falsified the truth. Such a result should be avoided if we can reasonably reach a different result. I have made no allusion thus far to the testimony of the ticket agent who sold the tickets and who it is claimed refused to redeem the same because he does not profess to have any recollection of the transaction. His testimony is based on his inferences growing out of the custom existing in similar transactions. In the nature of things he may have been mistaken. It is not possible for the other witnesses to have been mistaken. If their testimony is wrong it is because they intended that it should be wrong.

The evidence to sustain charges such as have been here made and in a proceeding of this kind should be clear and satisfactory and convincing. The respondent is presumed to be innocent and proof of his guilt should be clearly established. This is especially true where as in this case the charges if true constitute violations of the criminal law. There is another remedy against the respondent. The criminal courts are open for his prosecution. If he is convicted of a felony as he should be if these charges are true, disbarment will follow automatically and swiftly. We should not, except in a very clear case, anticipate what the verdict of a jury might be. We do not intend to imply that no action should ever be taken in a proceeding of this kind in advance of the action of the criminal courts, but where a doubtful question of fact exists and that doubt can best be resolved by a jury in an appropriate tribunal equipped for the determination of such questions of fact we should hesitate to take action based on the guilt of the respondent when our action might be at variance with the pronouncement of a jury on the same question. After a careful analysis of the evidence we have concluded that the charges against the respondent have not been established by satisfactory evidence.

The report of the referee is, therefore, set aside, and the proceeding dismissed.

All concurred.

Report of referee set aside and proceeding dismissed.